IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOHN H. MEDVED, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 10-775 |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| THE COUNTY OF WESTMORELAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### **MEMORANDUM ORDER**

For the reasons stated below, Defendants' motion for summary judgment (Doc. 23) will be granted.

John H. Medved ("Plaintiff"), brings the instant lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.*, alleging violations of the Eighth Amendment to the Constitution of the United States.[1]  Compl. (Doc. 1 ¶ 42).  This suit commenced on June 7, 2010, with the filing of the complaint.  (Doc. 1).  Defendants moved for summary judgment on June 24, 2011.  (Doc. 23).  Plaintiff responded thereto on July 15, 2011.  (Docs. 27-29).  This issue is ripe for disposition.

---

[1] Plaintiff raised a Fourteenth Amendment due process claim in his complaint, (Doc. 1 at 6), but explicitly withdrew that claim in his response to Defendants' motion for summary judgment. (Doc. 28 at 14).  Additionally, while Plaintiff initially sought relief under the Fourth and Fourteenth Amendments for allegedly receiving deficient medical care at Westmoreland County Prison, see (Doc. 1 ¶ 44), it is well-established that such a claim properly is brought under the Eighth Amendment when it relates to individuals who have been convicted of a crime, and are incarcerated for that conviction.  See Estelle v. Gamble, 429 U.S. 97, 104 (1978).

A.  Material Facts

At all times relevant to the complaint, Plaintiff was an inmate incarcerated at the Westmoreland County Prison ("WCP"), located in Greensburg, Pennsylvania. (Doc. 22 ¶ 1, 3). Plaintiff engaged in a physical altercation with another inmate on June 6, 2008. Id. ¶ 6. After the fight, Plaintiff hurried to his cell, and pretended to sleep. However, corrections officers eventually identified him as a participant. Id. ¶ 7. Plaintiff was ordered to stand up and step out his cell by corrections officers. Id. ¶ 9.

It is Plaintiff's position that he complied with this order, and was not at any time a threat to any of the corrections officers who came to apprehend him. (Doc. 27 at 4). Nevertheless, corrections Lieutenant Hostoffer ("Hostoffer") ordered his subordinates to throw Plaintiff to the ground and rub his face into the concrete floor.[2] Id. Plaintiff then alleges that he was hogtied and "forced to endure the weight of a three hundred pound Corrections Officer's knee in his back." Id. When Plaintiff complained that he was unable to breathe, Hostoffer allegedly ordered one of his subordinates to kick Plaintiff. Id. This subordinate corrections officer allegedly responded by kicking Plaintiff in the head. Id. Plaintiff alleges that he was then dragged to disciplinary confinement while still hogtied, and not provided adequate medical treatment for the injuries that he sustained as a result of the ordeal. (Doc. 22 ¶¶ 10-11); (Doc. 27 ¶¶ 10-11); (Doc. 1 ¶ 35).

It is Plaintiff's contention that the corrections officers who removed him from his cell and took him to disciplinary confinement on the morning of June 6, 2008, were members of a group known as the "Goon Squad." (Doc. 27 at 4). He alleges that these individuals were "sent to

---

[2] Neither Hostoffer, nor any of his subordinates, have been named as parties to this suit.

physically punish prisoners who were deemed to have stepped out of line[,]" and that their actions were so well-known throughout WCP that "officials knew or should have known that this activity was occurring." Id. In support of these allegations, Plaintiff adduces the two-page affidavit of former-inmate Aaron Monroe, who avers to have witnessed the beating of inmates by the "Goon Squad" on multiple occasions. (Doc. 29-2 ¶¶ 7-12). Monroe also avers to having recognized members of the "Goon Squad" in the video of Plaintiff being taken to disciplinary confinement on June 6, 2008. Id. ¶¶ 15-16.

In support of their motion for summary judgment, Defendants submit a video that partially captures the events of June 6, 2008. The video begins with Plaintiff being escorted down a hallway toward an elevator. It is clear that filming began after the period in time that Plaintiff alleges he was subjected to excessive force, as Plaintiff already is restrained by handcuffs and shackles when the video commences. However, it is important to note that Plaintiff is not hogtied at any point during the video.

Defendants' video chronicles Plaintiff's movement – sometimes under his own power, sometimes as he was being carried by corrections officers, in a manner that can fairly be characterized as "roughly" – through WCP, and into a disciplinary confinement cell. Shortly after entering the cell, Plaintiff is examined for injuries by a nurse. During this examination, Plaintiff denies being on any medications multiple times.

In his counterstatement of facts, Plaintiff alleges that he was receiving anti-anxiety medication when he began serving his sentence at WCP. However, this medication allegedly was discontinued pursuant to a prison policy that mandates the cessation of an inmate's

3

medication after three missed dosages.³ (Doc. 27 at 3-4). Plaintiff presents evidence that his anti-anxiety medication had been discontinued at some point in time prior to June 6, 2008. Id. at 4; (Doc 29-1 at 3-4, 13). Plaintiff testified at his deposition that, for the undetermined period of time that his anti-anxiety medication had been discontinued, he made numerous requests to staff to reinstate it "[e]very day[.]" (Doc. 29-1 at 13). His requests went unanswered, so he wrote letters, and even asked his mother to call a physician to intercede on his behalf. Id. In spite of his pleas, he alleges that he was not provided with anti-anxiety medication until after the fight on June 6, 2008. Id. Plaintiff attempts to lay at least partial blame for his involvement in this physical altercation on his lack of anti-anxiety medication. Id. at 5. Plaintiff has not provided a copy of this alleged medication cessation policy. However, it is notable that Defendants do not deny its existence, and they appear to be aware that Plaintiff bases one of his theories for recovery upon it. (Doc. 22 ¶ 2).

B. Municipal Liability Analysis

A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Instead, in order to state a claim of municipal liability under section 1983, a plaintiff must allege that he or she was subjected to a constitutional violation as the result of some identifiable official custom or policy of a municipality. Faylor v. Szupper, 411 F. App'x 525, 531 (3d Cir. 2011) (citing Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)). A policy includes "official

---

³ Plaintiff does not make any allegations in the complaint concerning the denial of medication prior to his fight with another inmate on June 6, 2008. To the contrary, Plaintiff's claims of inadequate medical treatment in the complaint concern solely those injuries allegedly suffered during the use of force. See (Doc. 1 ¶ 35). Plaintiff's claims based on issues pre-dating June 6, 2008, appear only in documents relating to the instant motion for summary judgment.

proclamations made by a municipal decisionmaker with final authority[.]" Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010) (citing Berg v. Cnty. of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000)). "Customs are practices of state officials . . . so permanent and well settled as to virtually constitute law." Berg, 219 F.3d at 275 (internal quotes omitted). Additionally, a plaintiff must establish that the municipality was the moving force behind his alleged injury. Board of Cnty. Comm'rs v. Brown, 520 U.S 397, 405 (1997). This means that the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. (citations omitted).

First, this Court addresses Plaintiff's claims that he was denied anti-anxiety medication for a period of time prior to the June 6, 2008, incident. Merely ceasing to provide medication to Plaintiff after missed three doses, in and of itself, is not a constitutional violation. "[O]ccasional missed doses of medication do not implicate the Constitution[.]" See Tapp v. Brazill, No. 11-677, 2011 WL 6181215, at * 3 (E.D. Pa. Dec 13, 2011) (citing Gresh v. Berks Cnty., No. 00-5697, 2002 WL 1635394, at *6 (E.D. Pa. Jul. 18, 2002)). Instead, whatever constitutional deprivation that was suffered by Plaintiff must be due to prison officials' failure to reinstate his medication. Plaintiff does not allege, nor does he adduce any evidence that would support the conclusion, that these officials' alleged denials of Plaintiff's request to renew his anti-anxiety medication were based on a prison policy or custom. Plaintiff has not met his burden with respect to this claim to show that municipal action was the moving force behind his injury. As a result, summary judgment will be granted in Defendants' favor. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (summary judgment may be granted against a party who fails to adduce

facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial).

Next, this Court addresses Plaintiff's claims regarding the excessive use of force that he allegedly suffered at the hands of the so-called "Goon Squad." There is absolutely no evidence on the record that these alleged acts were performed as the result of some policy or custom at the prison. To the extent that Plaintiff claims that, because Hostoffer – a corrections lieutenant – was acting as a policymaker because he allegedly gave direct orders to use excessive force on Plaintiff, his argument is unpersuasive. Plaintiff does not cite to a single case in which a corrections lieutenant has been held to be a policymaker. Indeed, courts within the Third Circuit have rejected similar arguments before. See, e.g., Davis v. City of Phila., No. 05-4571, 2009 WL 2461777, at *4 (E.D. Pa. Aug. 11, 2009) (holding that police captains, lieutenants, sergeants, inspectors, and deputies did not have the "final, unreviewable discretion" necessary to be considered policymakers) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1481 (3d Cir. 1990)); see also Hock v Cnty. of Bucks, No. 04-CV-4517, 2005 WL 3488726, at *3 (E.D. Pa. Dec. 16, 2005); see also, Schuenemann v. United States, No. 05-2565, 2006 WL 408404, at *5 n.9 (3d Cir. Feb. 23, 2006) (noting that a corrections lieutenant at Allegheny County Jail in Pittsburgh, Pennsylvania, did not qualify as a policymaker for the purposes of section 1983 liability).

Furthermore, Plaintiff has not adduced evidence that the alleged acts of the "Goon Squad" were so well known and pervasive to qualify as "customs." While Monroe's affidavit does contain formulaic averments that the knowledge of the existence of the "Goon Squad" was so prevalent that "prison officials knew or should have known" about it, see (Doc. 29-2 ¶ 6), Plaintiff does not provide any evidence that this actually was the case. Instead, Monroe

recounted only a few instances of the alleged use of force by the "Goon Squad," and then went on to describe how the "Goons" allegedly engaged in efforts to conceal their acts. (Doc. 29-2 ¶¶ 8-14). Additionally, while Plaintiff mentioned the "Goon Squad" briefly in his deposition, he does so only in the context of Hostoffer telling him, personally, that any mention of its existence at a disciplinary hearing would be denied. (Doc. 29-1 at 15-16). Even the recording of Plaintiff's transfer to disciplinary confinement was produced in such a way to exclude Plaintiff's removal from his cell and the application of restraints – the period in time, during which Plaintiff alleges that he was subjected to the use of excessive.

Plaintiff's evidence arguably supports the conclusion that the "Goon Squad" exists as a clandestine group of corrections officers, and that the group has used excessive force on inmates in the past. It does not, however, support the conclusion that decisionmakers at WCP knew or should have known about the group's existence, or its alleged bad acts. Indeed, the allegations made in the Monroe affidavit establish that the "Goon Squad" attempts to conceal its actions. There simply is no evidence on the record that complaints regarding the "Goon Squad" ever were brought to the attention of prison or county decisionmakers, or that its actions would have or should have come to the policymakers' attention on their own, or that the alleged bad behavior of this group was so well entrenched or pervasive to have nearly the force of law. Instead, the evidence adduced by Plaintiff with respect to the "Goon Squad" demonstrates merely that inmates were aware of its existence, and that its members had engaged in the possible use of excessive force on a few occasions, over an undetermined period of time. This is not sufficient to demonstrate that a custom or policy condoning the alleged acts of the "Goon Squad" existed, or that Defendants possessed the level of culpability required for municipal liability to attach based on a theory of failure to train. See Connick v. Thompson, 563 U.S. ___, 131 S. Ct. 1350,

7

1359-60 (2011). Accordingly, summary judgment will be granted to Defendants on Plaintiff's claims of excessive force.

Finally, to the extent that Plaintiff maintains his original claim that he was denied adequate medical treatment for the injuries that he sustained from the incident of June 6, 2008, summary judgment will be granted to Defendants for two reasons. First, it is clear from the video evidence and medical records adduced in this case that Plaintiff was provided with constitutionally-adequate medical treatment. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (acts that would rise only to the level of medical malpractice, or mere disagreement over a course of treatment, are not violations of the Eighth Amendment). Second, even if this were not the case, Plaintiff has adduced no evidence that the alleged inadequacies of the treatment that he received subsequent to the incident were in any way the result of a municipal policy or custom. Plaintiff has failed to adduce sufficient evidence to demonstrate the existence of a single genuine issue of material fact, that, would allow a reasonable trier of fact to find in his favor on a theory of municipal liability, and summary judgment will be granted in Defendants' favor.

AND NOW, this 15th day of March, 2012,

IT IS HEREBY ORDERED that, for the reasons stated above, Defendants' motion for summary judgment (Doc. 23) is GRANTED.

BY THE COURT:

s/Cathy Bissoon
CATHY BISSOON
UNITED STATES DISTRICT JUDGE

cc (via CM/ECF):
All Counsel of Record